# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANIEL S. NIKETOPOULOS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 C 6234 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | Magistrate Judge Susan E. Cox |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Daniel S. Niketopoulos ("Plaintiff") appeals the Commissioner of Social Security's decision to deny him Supplemental Security Income benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act. We grant Plaintiff's motion for summary judgment [dkt. 24] and deny the Commissioner's motion for summary judgment [dkt. 31]. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

## STATEMENT

Plaintiff appeals the Commissioner of Social Security's decision to deny him Supplemental Security Income benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act.[1] A motion to reverse the decision of the Commissioner has been filed on behalf of Plaintiff Daniel S. Niketopoulos. A motion for summary judgment has been filed on behalf of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"). For the reasons outlined below, we grant Plaintiff's motion [dkt. 24] and deny the Commissioner's motion [dkt. 31]. The Administrative Law Judge's ("ALJ") decision is reversed and remanded for further proceedings consistent with this opinion.

---

[1] *See* 42 U.S.C. §§ 405(g), 216(i), 223(d).

On May 27, 2008, Plaintiff was lifting approximately 50 pounds of yard waste at his job as waste management driver when he developed back and groin pain.[2] He continued to work at a light level until December 5, 2008, his alleged onset date for disability.[3] Plaintiff's injuries resulted in pain in his neck and lower back, and an aching, burning feeling in his left arm.[4] He rated his pain levels between 5 to 9, on a 1 to 10 scale.[5] Due to his injuries, on December 9, 2008, Plaintiff had surgery that included a spinal decompression and fusion.[6] On September 9, 2009, Plaintiff had surgery on his left shoulder, which included a shoulder labral tear ("SLAP") lesion repair and arthroscopy.[7] On October 22, 2010, Plaintiff underwent surgery on his neck.[8] Plaintiff later developed pain in his right shoulder while undergoing physical therapy.[9] On February 28, 2011, Plaintiff had an MRI of his right shoulder.[10] After viewing the MRI, Plaintiff's treating physician, Dr. Giridhar Burra, M.D., diagnosed Plaintiff with a right shoulder SLAP lesion and posterior labral tear.[11]

On March 15, 2010, Plaintiff applied for social security disability benefits.[12] On May 13, 2010, consulting physician Dr. Reynaldo Gotanco, M.D., examined Plaintiff in connection with the application.[13] He found that Plaintiff should be limited in reaching in all directions, including overhead.[14] Dr. Gotanco further noted that Plaintiff's self-reported pain and its effect on function

---

[2] R. at 430.
[3] R. at 133.
[4] R. at 308.
[5] *Id.*
[6] R. at 339.
[7] R. at 362.
[8] R. at 463.
[9] R. at 48.
[10] R. at 461.
[11] *Id.*
[12] R. at 132.
[13] R. at 456.
[14] R. at 453.

were credible in regard to his shoulder and back/neck discomfort.[15] On August 3, 2010, a Disability Determination Services physician, Dr. Virgilio Pilapil, M.D., also offered a medical opinion on reconsideration request.[16] Dr. Pilapil affirmed the previous determinations made by Dr. Gotanco.[17]

On September 6, 2011, the Administrative Law Judge ("ALJ"), Steven Templin, held a hearing in which the following individuals testified: Plaintiff, Richard Fisher (vocational expert), and Dr. Bernard Stevens, M.D. (medical expert).[18] Dr. Stevens noted that Plaintiff's treating physician, Dr. Burra, believed Plaintiff had a labral tear in his right shoulder, because the medical expert had not yet had a chance to review the 2011 MRI results confirming the tear.[19] He further opined that Plaintiff should be limited to light work, lifting 20 pounds occasionally, but 10 pounds frequently, and sit, stand or walk for six hours out of an eight-hour day.[20] Dr. Stevens's residual functional capacity ("RFC") assessment also included limitations such as no ladder or scaffold work, occasional stooping and crawling, frequent overhead reaching on the left side, and probably frequent reaching on the right side.[21]

Plaintiff then testified that he had neck pain that extends from behind his ear all the way down to the middle of his shoulder, and it was a burning pain.[22] He further explained that he never knows what could trigger the pain, and it could last from 10 minutes to 2 hours.[23] Plaintiff then explained that since his surgeries, he had developed an issue with his elbow tendon that

---

[15] R. at 454.
[16] R. at 448.
[17] R. at 446.
[18] R. at 32.
[19] R. at 35.
[20] R. at 37.
[21] R. at 38.
[22] R. at 44.
[23] *Id*.

caused numbness in both hands occasionally.[24] Plaintiff stated that he usually takes 2 hydrocodone a day, but the medication does not make the pain go away completely.[25] He then explained that he keeps all of his dishes and glasses on the first shelf in his kitchen because he has trouble reaching over his head.[26] His right shoulder pain began when he was in physical therapy, but he reaches above his head about 20 times a day, such as when showering.[27]

The ALJ then questioned the vocational expert, and asked him whether, given the medical expert's RFC opinion, Plaintiff could perform his past relevant work.[28] The vocational expert opined that Plaintiff could not perform his past relevant work.[29] However, given the medical expert's restrictions, the vocational expert stated that Plaintiff could perform other work in the national economy, such as cashier and routing clerk.[30] The ALJ then altered the hypothetical to a restriction of sedentary exertion, and the vocational expert stated that Plaintiff could perform jobs such as telephone quote clerk and order clerk.[31] The vocational expert then specified that the jobs would allow for a sit/stand option, but more than occasional standing would create postural problems that affect the other limitations in the RFC, such as occasional stooping.[32]

After the hearing, Plaintiff submitted additional medical records, including MRI results from February 2011.[33] Plaintiff's treating physician, Dr. Burra, reviewed the MRI, and examined Plaintiff on February 28, 2011.[34] Dr. Burra indicated that Plaintiff had a right shoulder

---

[24] R. at 45.
[25] R. at 46-47.
[26] R. at 48.
[27] *Id*.
[28] R. at 60.
[29] R. at 61.
[30] *Id*.
[31] R. at 61-62.
[32] R. at 62.
[33] R. at 462.
[34] R. at 461.

SLAP lesion and posterior labral tear,[35] thereby confirming for the record a diagnosis the medical expert had only indicated to be a belief by Plaintiff's treating physician.[36] The ALJ forwarded the medical evidence to the medical expert, Dr. Stevens, to determine if the doctor needed to reassess his RFC determination.[37] Dr. Stevens indicated that the additional evidence did not change his original RFC opinion.[38] However, Dr. Stevens's note indicated "there was a *possible* labral tear," a misstatement of the MRI results, which stated Plaintiff had a "posterior labral tear."[39] Plaintiff's counsel submitted a letter to the ALJ, indicating that the medical expert had failed to adequately consider Plaintiff's shoulder impairment based on that misstatement.[40]

In the opinion he wrote after the hearing, the ALJ rejected Plaintiff's argument that the medical expert failed to adequately consider Plaintiff's shoulder impairment in the medical expert's RFC opinion.[41] The ALJ stated his reasons for rejecting the argument were based on the his finding that Plaintiff's allegations were credible as to symptoms, including pain, but not as to duration and frequency.[42] The ALJ also indicated that he was convinced by the medical expert's RFC assessment, and that the limitation to frequent overhead reaching with either extremity was reasonable based on the "expanded record at the time of the hearing."[43] The ALJ then noted that the opinions of the consulting physician were "generally consistent" with the medical expert.[44]

The ALJ issued his decision on May 4, 2012, and determined that: (1) Plaintiff met the

---

[35] *Id.*
[36] R. at 467.
[37] R. at 469.
[38] R. at 472 (emphasis added), 461.
[39] R. at 472.
[40] R. at 303.
[41] R. at 17.
[42] R. at 22.
[43] *Id.*
[44] R. at 23.

insured status requirements; (2) Plaintiff had not engaged in substantial gainful activity at any time material to the opinion; (3) Plaintiff had at least one medically severe impairment; (4) Plaintiff's impairments, even in combination, did not meet any of the criteria in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff had the residual functional capacity to perform light work; (6) Plaintiff was unable to perform past relevant work; (7) Plaintiff's acquired vocational skills were not transferrable; (8) and, there exist jobs in significant numbers in the national economy to which Plaintiff could adapt and perform.[45]

On June 26, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's determinations.[46] The decision of the ALJ became the final decision of the Commissioner of Social Security in the case.[47] Plaintiff then brought this action for appeal under 42 U.S.C. §405(g).

## DISCUSSION

### I. STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act,[48] if it is supported by substantial evidence, and if it is free of legal error.[49] Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[50] Although we review the ALJ's decision deferentially, he must nevertheless build a "logical bridge" between the evidence and her conclusion.[51] A "minimal[] articulat[ion] of his justification" is enough.[52]

---

[45] *Id.*
[46] R. at 1.
[47] *Id.*
[48] 20 C.F.R. §§ 404.1520(a) and 416.920(a).
[49] 42 U.S.C. § 405(g).
[50] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[51] *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).
[52] *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

## II. THE ALJ ERRED IN RELYING ON THE MEDICAL EXPERT'S MISSTATED OPINION TO FORM HIS RFC DETERMINATION

The ALJ must determine Plaintiff's residual functional capacity ("RFC"), which represents the maximum that a person can do despite his limitations.[53] The ALJ must consider all severe and non-severe limitations that arise from medically determinable impairments.[54] An RFC determination is not a final determination of disability, but a tool that the ALJ uses to assess what work-related activities a person could perform.[55] The ALJ can rely on medical experts' opinions and translations of those opinions in to an RFC assessment, as long as the determination is based on substantial evidence.[56] While Plaintiff must establish his disability, the ALJ has a duty to fully develop the record.[57] The ALJ needs to re-contact medical sources when the evidence received is inadequate to determine whether the claimant is disabled.[58] Plaintiff alleges that the ALJ erred by not re-contacting the medical expert to clarify the doctor's post-hearing opinion.[59]

Here, the ALJ relied on the medical expert's opinion that Plaintiff was capable of "probably frequent reaching overhead" in determining RFC limitations.[60] Records from Plaintiff's treating physician, Dr. Burra, regarding a 2011 MRI were submitted after the hearing and forwarded to the medical expert, Dr. Stevens, for review and reconsideration of his RFC assessment.[61] In his updated opinion, the medical expert stated that the new medical records indicated "there was a *possible* labral tear," and his RFC given at the hearing did not change as a

---

[53] 20 C.F.R. § 404.1545(a)(1); *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).
[54] *Milliken v. Astrue*, 397 Fed. App'x 218, 221 (7th Cir. 2010).
[55] *Id*. at 222.
[56] *Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002).
[57] *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014).
[58] *Skarbeck v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). *See* 20 C.F.R. § 416.920(c).
[59] Dkt. 24 at 11.
[60] R. at 22.
[61] R. at 469.

result.[62]  However, Dr. Stevens misstated the records, which indicated that there was actually a "*posterior* labral tear."[63]  The ALJ rejected Plaintiff's contentions that, because the medical expert misstated Plaintiff's impairment, the medical expert failed to fully consider Plaintiff's shoulder limitations.[64]  The ALJ based his finding that Dr. Stevens fully considered all of Plaintiff's limitations on the remainder of the record.[65]  However, the rest of the record does not support Dr. Stevens's hearing testimony that Dr. Burra only "believed" there was a tear, or Dr. Stevens's follow-up opinion that Plaintiff only had a "possible labral tear."[66]  The MRI taken 7 months before the hearing, and provided to the medical expert after the hearing, clearly showed a diagnosis confirming a posterior labral tear in Plaintiff's right shoulder.[67]  It is thus unclear whether Dr. Stevens misinterpreted the results of the MRI, misstated them, or formed his own incorrect diagnosis as to Plaintiff's injury.

Additionally, the medical expert was the only doctor in the record who offered an opinion who had a chance to review the 2011 MRI.  The ALJ may have given Dr. Stevens the benefit of the doubt, but to rely on only one medical expert who reviewed the results and misstated them is improper.  Since Dr. Stevens was the only expert to review the MRI and offer an RFC based on having reviewed those results, his opinion could not be corroborated by any other medical opinion in the record.  The ALJ should have re-contacted Dr. Stevens to clarify Dr. Stevens's opinion because it was not supported by substantial evidence in the record, such as opinions by other doctors.  The ALJ thus needed to re-contact the physician because the evidence was inadequate to determine Plaintiff's limitations for the RFC.

---

[62] R. at 472 (emphasis added).
[63] R. at 467 (emphasis added).
[64] R. at 17.
[65] *Id*.
[66] R. at 35, 472.
[67] R. at 461.

The ALJ also noted his subsequent finding that Plaintiff's allegations of the intensity of his symptoms were not credible to support the ALJ's decision that Dr. Stevens had adequately reviewed the record.[68] However, consultative physicians Dr. Pilapil and Dr. Gotanco both examined Plaintiff in 2010.[69] At the time of Dr. Gotanco's examination, he found Plaintiff's allegations credible with regard to Plaintiff's left shoulder and neck discomfort.[70] Even before the additional right shoulder lesion was discovered, Dr. Gotanco opined Plaintiff should be limited in reaching in all directions, including overhead.[71] However, the ALJ found the opinions of the consulting physicians were "generally consistent" with the medical expert.[72] Clearly, the opinions of the consulting physicians and Dr. Stevens were not "general consistent," and, therefore, there are inconsistencies in the record that the ALJ failed to properly address. As such, there was not substantial evidence in the record to support a finding that Dr. Stevens had properly reviewed and incorporated all of Plaintiff's limitations in his RFC opinion because of Dr. Stevens's misstatement, and inconsistencies between the physicians' opinions. The ALJ thus erred by not re-contacting the doctor to clarify his opinion.

### III. THE ALJ'S HYPOTHETICAL TO THE VOCATIONAL EXPERT WAS IMPROPER BECAUSE THE LIMITATIONS WERE UNCLEAR

Plaintiff contends that the ALJ's hypothetical to the vocational expert should not have included the ability to frequently reach overhead.[73] An ALJ can rely on a vocational expert's testimony, but the expert needs to be aware of all of the Plaintiff's limitations that are supported by the medical record.[74] However, an ALJ need only include those limitations and impairments

---

[68] R. at 17-22.
[69] R. at 448, 454.
[70] R. at 454.
[71] R. at 453.
[72] R. at 23.
[73] Dkt. 24 at 14.
[74] *Yurt*, 758 F.3d at 857.

9

that he finds to be credible.[75]  A limitation may be considered incorporated if it stems from a Plaintiff's underlying condition that is mentioned in the hypothetical.[76]  The vocational expert can be made aware of those limitations through reviewing the medical record, or hearing testimony.[77]

The ALJ referenced the medical expert's RFC to the vocational expert at the hearing when presenting a hypothetical to the vocational expert.[78]  The medical expert's RFC included "probably still frequent reaching on the right side."[79]  However, the ALJ did not restate the limitations to the vocational expert, or clarify what the medical expert may have meant by "probably frequent reaching."  All the ALJ said in terms of an RFC was "based on the residual functional capacity described by the doctor here today," and proceeded to ask what jobs Plaintiff could perform.[80]  Thus, while the vocational expert heard the testimony, and thus likely considered reaching problems as a limitation in assessing jobs Plaintiff could perform, it is unclear to what extent the vocational expert considered the limitation because the ALJ never actually articulated any limitations to the vocational expert.

Furthermore, because of the lack of clarity as to whether the medical expert properly assessed the 2011 MRI, the vocational expert may not have been aware of the most comprehensive RFC assessment.  Therefore, the RFC may need to be readjusted and resubmitted to the vocational expert after the medical expert's opinion is clarified.  Regardless, the ALJ should still clarify the specific limitations included in his RFC determination to be presented to the vocational expert.  The ALJ's decision itself was also not completely clear as to what exact

---

[75] *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007).
[76] *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009).
[77] *Yurt*, 758 F.3d at 857-858.
[78] R. at 60.
[79] R. at 38.
[80] R. at 60.

limitations the ALJ included in his RFC finding because the decision lists limitations throughout, but never in a cohesively articulated RFC determination.[81] Therefore, the ALJ needs to clarify his RFC findings upon remand.

## CONCLUSION

For the foregoing reasons, we reverse and remand this matter for further proceedings consistent with this opinion. Plaintiff's motion is granted [dkt. 24] and the Commissioner's motion for summary judgment is hereby denied [dkt. 31].

**ENTER:**
**DATED:** 8/14/2015

Susan E. Cox
United States Magistrate Judge

---

[81] R. at 22.